1  Matthew J. Langley (SBN 34286)
2  **ALMEIDA LAW GROUP LLC**
   849 W. Webster Avenue
3  Chicago, Illinois 60614
   t: (708) 529-5418
4  matt@almeidalawgroup.com

5  *Attorney for Plaintiff & the Proposed Classes*

6

7                  **UNITED STATES DISTRICT COURT**

8                  **CENTRAL DISTRICT OF CALIFORNIA**

9  | NICK GAIGE, *on behalf of himself and all* | Case No. 2:24-CV-06099-SPG-AJR |
10 | *others similarly situated,* | |

11 |                           Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS** |
12 | | |
13 |                 v. | |
14 | EXER HOLDING COMPANY, LLC, | |

15 | | Date: January 29, 2025 |
16 |                           Defendant. | Time: 1:30 p.m. |
17 | | Courtroom: 7D |
   | | Judge: Hon. Anne Hwang |
18 | | |
19 | | Class Action Complaint Filed: July 19, 2024 |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

FACTUAL BACKGROUND ......................................................................................3

LEGAL STANDARD ..................................................................................................4

ARGUMENT ................................................................................................................5

I.    PLAINTIFF HAS ARTICLE III STANDING BECAUSE HE ADEQUATELY ALLEGES INJURY AND TRACEABILITY. .........................5

II.    PLAINTIFF'S CLAIMS ARE LEGALLY SUFFICIENT. .........................6

  A.    Plaintiff's Claims were Tolled by Defendant's Surreptitious Installation of Tracking Technologies. ........................................................6

  B.    The *AHA* Decision does not Support Granting Defendant's Motion. ......9

  C.    Plaintiff's Disclosed Information is Personally Identifiable. ................11

  D.    Plaintiff's ECPA and CIPA Claims are Sufficiently Pled Because they Allege the Applicability of the Crime-Tort Exception. ...................13

  E.    Plaintiff Sufficiently States a CMIA Claim. ...............................................16

  F.    Plaintiff has Plausibly Pled Invasion of Privacy by Showing a Reasonable Privacy Interest and a Highly Offensive Intrusion. ..........................17

III.    DEFENDANT'S MOTION TO STRIKE IS PREMATURE AND FAILS TO MEET THE STANDARDS OF RULE 12(F). ............................................20

  A.    Striking Plaintiff's Class Allegations is Premature. ...............................20

  B.    Plaintiff's Proposed Class Fulfills the Rule 23 Requirements at the Pleading Stage. ..............................................................................................21

  C.    Plaintiff's Proposed Class is Readily Ascertainable. .............................23

CONCLUSION ............................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*A.D. v. Aspen Dental Mgmt., Inc.,*
   *2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)* .........................................................10

*A.J. v. LMND Med. Grp., Inc.,*
   2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) ........................................................7

*Am. Acad. of Pediatrics v. Lungren,*
   16 Cal.4th 307 (1997) ..........................................................................................19

*American Hospital Association v. Becerra,*
   2024 WL 3075865 (N.D. Tex. June 20, 2024) ........................................... *passim*

*B.K. v. Desert Care Network,*
   2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .............................................. *passim*

B.K. v. Eisenhower Med. Ctr.,
   2024 WL 2037404 (C.D. Cal. Apr. 11, 2024)..................................... 14, 17

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...............................................................................................4

*Brodsky v. Apple Inc.,*
   445 F. Supp. 3d 110 (N.D. Cal. 2020)....................................................................9

*Brown v. Google LLC,*
   525 F. Supp. 3d 1049 (N.D. Cal. 2021)..................................................................8

*Caro v. Weintraub,*
   618 F.3d 94 (2d Cir. 2010) ...................................................................................14

*Castillo v. Costco Wholesale Corp.,*
   2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .................................................14

*Cholakyan v. Mercedes-Benz USA, LLC,*
   796 F. Supp. 2d 1220 (C.D. Cal. 2011)................................................................21

*Criminal Productions, Inc. v. Doe-72.192.163.220,*
   2016 WL 6822186 (S.D. Cal. Nov. 18, 2016) .....................................................13

*Doe v. Davita Inc.*,
  2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ......................................17

*Doe v. FullStory, Inc.*,
  712 F. Supp. 3d 1244 (N.D. Cal. 2024), 712 F.Supp.3d ..................6, 7

*Doe v. Kaiser Foundation Health Plan, Inc.*,
  2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)......................................15

*Doe v. Meta Platforms, Inc.*,
  690 F.Supp.3d 1064 (N.D. Cal. Sept. 7, 2023) ...............................4, 15

*Doe v. Regents of University of California*,
  672 F.Supp.3d 813 (N.D. Cal. 2023) ..................................................18

*Fan v. NBA Properties Inc.*,
  2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ....................................11

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005)...........................................................................7

*Gershezon v. Meta Platforms, Inc.*,
  2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ......................................8

*Glenn v. Hyundai Motor Am.*,
  2016 WL 3621280 (C.D. Cal. June 24, 2016) .....................................20

*Grafilo v. Wolfsohn*,
  33 Cal. App. 5th 1024 (2019) .............................................................19

*Hartley v. Univ. of Chicago Med. Ctr.*,
  2024 WL 1886909 (N.D. Ill. Apr. 30, 2024)..........................................2

*Heerde v. Learfield Communications, LLC*,
  2024 WL 3573874 (C.D. Cal. July 19, 2024) .....................................12

*Hexcel Corp. v. Ineos Polymers, Inc.*,
  681 F.3d 1055 (9th Cir. 2012) ...............................................................8

*In re Anthem, Inc. Data Breach Litigation*,
  327 F.R.D. 299 (N.D. Cal. 2018) ........................................................22

*In re Facebook, Inc. Consumer Priv. Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019)................................................17

iii

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ..............................................................6, 22

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015) ....................................................................22

*In re Google Location Hist. Litig.*,
  428 F. Supp. 3d 185 (N.D. Cal. 2019)......................................................21

*In re Google Location Hist. Litig.*,
  514 F. Supp. 3d 1147 (N.D. Cal. 2021)....................................................11

*In re Google RTB Consumer Priv. Litig.*,
  606 F. Supp. 3d 935 (N.D. Cal. 2022)..................................................4, 21

*In re Grp. Health Plan Litig.*,
  709 F. Supp. 3d 707 (D. Minn. 2023) ......................................................16

*In re Hulu Privacy Litig.*,
  2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)..........................................12

*In re iPhone Application Litigation*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................................................19

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022)...................................... 13, 18, 19

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ......................................................... 12, 17

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
  505 F. Supp. 2d 609 (N.D. Cal. 2007)...................................................5, 20

*In re Yahoo! Litig.*,
  251 F.R.D. 459 (C.D. Cal. 2008)..............................................................23

*Johnson v. Microsoft Corporation*,
  2009 WL 1794400 (W.D. Wash. June 23, 2009) ......................................13

*Kane v. Univ. of Rochester*,
  2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)...........................................2

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012)....................................................19

iv

*M.G. v. Therapymatch, Inc*,
  2024 WL 4219992 (N.D. Cal. Sept. 16, 2024)....................................................10

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ...........................................................................5

*McDonald v. Kiloo ApS*,
  385 F. Supp. 3d 1022 (N.D. Cal. 2019).............................................................17

*Mekhail v. N. Mem'l Health Care*,
  726 F. Supp. 3d 916 (D. Minn. 2024) ...............................................................16

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
  2024 WL 4350328 (E.D. Pa. Sept. 30, 2024)....................................................11

*Ning Xianhua v. Oath Holdings, Inc.*,
  536 F. Supp. 3d 535 (N.D. Cal. 2021)................................................................9

*Okash v. Essentia Health*,
  2024 WL 1285779 (D. Minn. Mar. 26, 2024).....................................................15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022)...........................................................................22

*Ovando v. Cnty. of Los Angeles*,
  159 Cal. App. 4th 42 (2008).............................................................................7

*R.C. v. Walgreen Co.*,
  733 F. Supp. 3d 876 (C.D. Cal. 2024)......................................................... *passim*

*Rodriguez v. Google LLC*,
  2021 WL 2026726 (N.D. Cal. 2021).................................................................19

*Rosales v. FitFlop USA, LLC*,
  882 F. Supp. 2d 1168 (S.D. Cal. 2012) .............................................................20

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ....18

*St. Aubin v. Carbon Health Techs. Inc.*,
  2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)......................................... 11, 16, 19

*Tanner v. Acushnet Company*,
  2023 WL 8152104 (C.D. Cal. Nov. 20, 2023)....................................................19

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

*Toy v. Life Line Screening of Am. Ltd.*,
  2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) ......................................................2

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ...............................................................................................4

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
  245 F.3d 1048 (9th Cir. 2001) ..............................................................................24

*Underwood v. Future Income Payments, LLC*,
  2018 WL 4964333 (C.D. Cal. Apr. 26, 2018).......................................................21

*Velasco v. SEI Pharms., Inc.*,
  2013 WL 2444646 (S.D. Cal. June 5, 2013) .........................................................20

*Vietnam Veterans of Am. v. C.I.A.*,
  288 F.R.D. 192 (N.D. Cal. 2012) ..........................................................................23

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) ..................................................................................6

*Yastrab v. Apple Inc.*,
  2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) .......................................................5

**Statutes**

18 U.S.C. § 2511 ........................................................................................................15

18 U.S.C. §§ 2510 *et seq.* .........................................................................................13

42 U.S.C. § 1320 ........................................................................................................10

42 U.S.C. § 1320d ............................................................................................... 10, 12

Cal. Civ. Code § 56 ......................................................................................................3

Cal. Penal Code §§ 630 *et seq.* ................................................................................13

**Rules**

Fed. R. Civ. P. 12 .....................................................................................................4, 5

Fed. R. Civ. P. 23 ......................................................................................................21

Fed. R. Civ. P. 9 ..........................................................................................................6

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

**Regulations**

45 C.F.R. § 160.103 ...................................................................... 10, 11, 12

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

**INTRODUCTION**

In its Motion to Dismiss, Defendant Exer Holding Company, LLC ("Defendant" or "Exer") does not deny using Pixels and other Tracking Technologies[1] on its website, exerurgentcare.com ("Website"), to surreptitiously collect its patients' personally identifiable information ("PII"), protected health information ("PHI," and with PII, "Private Information") and individually identifiable health information ("IIHI"). Nor does Exer deny that, in so doing, it divulges patients' and prospective patients' sensitive confidential information to third parties, such as Facebook and Google, without consent. Exer's tacit admission warrants denial of its motion to dismiss as its use of Tracking Technologies, detailed in the Complaint, is unlawful under the Health Insurance Portability and Accountability Act ("HIPAA").

Exer attempts to avoid judicial scrutiny by claiming that the Complaint fails to trace Plaintiff's injuries to Defendant's use of Tracking Technologies and that, despite the surreptitious use of these Tracking Technologies, the delayed discovery rule did not toll the statute of limitations. *See* ECF No. 22 at 12-16 ("MTD"). But these arguments ignore the plain allegations of the Complaint which (i) explain that after using the Website, most recently in February and March 2024, Plaintiff began receiving advertisements from Meta related to the protected communications disclosed by Defendant and (ii) sufficiently allege the time and manner Plaintiff discovered his claims. *See* ¶¶ 168-70 & 180-86.[2]

Exer also points to *American Hospital Association v. Becerra*, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ("*AHA*"), a narrow decision out of the Northern

---

[1] The Meta Pixel (the "Pixel"), Facebook SDK, Facebook Conversions API, Google Analytics, Google Tag Manager, DoubleClick (owned by Google), and related tools (collectively, "Tracking Technologies").

[2] All paragraph citations are to Plaintiff's complaint ("Complaint") (ECF No. 1).

District of Texas which addressed the Department of Health and Human Services
Office of Civil Rights guidance ("HHS Guidance") on online tracking technologies,
to argue that Plaintiff's claims should be dismissed. MTD at 16-17. *AHA* is
inapplicable here as it addressed only the discrete issue of online technology that
discloses (i) an individual's IP address along with (ii) a visit to an unauthenticated
public webpage addressing specific health conditions or healthcare providers (the
"Proscribed Combination") not allegations of PHI disclosure including website
information that goes well beyond unauthenticated webpages (such as appointments,
specific search terms, and specific location information as alleged here). *Compare*
2024 WL 3075865, at *17, n. 8 ("Such vacatur is not intended to, and should not be
construed as, limiting the legal operability of other guidance in the germane HHS
document."), with ¶¶ 168-85.

Exer goes on to argue that Plaintiff's wiretap claims should be dismissed
because the one-party exception forecloses liability and the crime-tort exemption
does not apply, including because the sensitive health information it disclosed was
not PHI or PII. MTD at 17-24. But courts in this district and throughout the country,
have found that the crime-tort exception applies where a defendant discloses health
information almost identical to the information Plaintiff alleged was disclosed here
and through the very Tracking Technologies Exer employed.[3]

Plaintiff's additional statutory and common law claims are likewise
sufficiently pled. The Complaint makes allegations of the specific medical
information Exer disclosed sufficient to support Plaintiff's California

---

[3] *See, e.g.*, *Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *1 (N.D.
Cal. Mar. 19, 2024) (denying motion to dismiss CIPA); *B.K. v. Desert Care Network*,
2024 WL 1343305, at *1 (C.D. Cal. Feb. 1, 2024) ("*Desert Care*") (denying motion
to dismiss CIPA and ECPA); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 890 (C.D.
Cal. 2024) ("*Walgreens*") (same); *Hartley v. Univ. of Chicago Med. Ctr.*, 2024 WL
1886909, at *2 (N.D. Ill. Apr. 30, 2024) (denying motion to dismiss ECPA); *Kane
v. Univ. of Rochester*, 2024 WL 1178340, at *4 (W.D.N.Y. Mar. 19, 2024) (same).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

Confidentiality of Medical Information Act, Cal. Civ. Code § 56 (West), *et seq.*
("CMIA") claim. And Plaintiff's invasion of privacy claims are sufficiently
established by allegations that he had a reasonable expectation of privacy and the
disclosure of his PHI was a highly offensive intrusion. ¶¶ 168-85.

Finally, Exer's attempt to strike the class allegations, MTD at 31-35, fail to
meet the standard of Rule 12(f) and are premature where the Complaint allegations
meet the Rule 23 requirements at the pleading stage. At this early stage, where all
reasonable inferences must be drawn in Plaintiff's favor, the Court should reject
Exer's attempt to sidestep its unlawful conduct and deny the motion to dismiss in its
entirety.

## FACTUAL BACKGROUND

The Complaint alleges that Defendant Exer operates over 55 urgent care
clinics across the Los Angeles area. ¶ 4. Unbeknownst to its patients and prospective
patients, Exer installed the Meta Pixel and additional Tracking Technologies which
intercepted and transmitted patients' sensitive communications to unauthorized third
parties like Meta Platforms, Inc. and Google LLC. ¶¶ 4-7. The Tracking
Technologies allowed these and other third parties to intercept the contents of patient
communications, view patients' PII and PHI, mine it for purposes unrelated to
healthcare, and monetize it to deliver targeted advertisements. ¶ 6.

Exer encourages its patients and prospective patients to use its Website to (i)
book medical appointments, (ii) locate urgent care facilities, (iii) pay bills, and (iv)
research medical treatment options. ¶ 7. Specifically, Plaintiff Nick Gaige has been
a patient of Exer since 2016 and disclosed his Private Information to Exer by using
the Website on numerous occasions, most recently in February and March 2024. ¶¶
168-69. He used Exer's Website to research symptoms, testing, and diagnosis for his
specific health conditions, schedule appointments, and submit private medical
information. ¶¶ 171-74 & 180-81. Through its Tracking Technologies, Exer

transmitted Plaintiff's Facebook ID, computer IP address and other personal identifiers to Facebook alongside his PHI. ¶¶ 178-81. Plaintiff never consented to Exer disclosing his Private Information to third-party companies. ¶¶ 179-80. Yet, following his use of the Website, he received targeted advertisements related to his specific medical conditions on his Meta accounts. ¶ 181

Notably, Exer's privacy policy promised patients that it would keep patients' Private Information confidential and would only disclose this protected information under certain circumstances, none of which apply here. ¶¶ 108-109. Nothing in the privacy policy revealed that Exer would intercept and disclose substantive health information that Meta and Google could link to individual patients. ¶¶ 93-98. Despite its privacy promises, Exer intercepted and disclosed its patients' Private Information without authorization.

## LEGAL STANDARD

To satisfy Article III's case or controversy requirement, Plaintiff must establish that he has standing to invoke the jurisdiction of the federal courts. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To do so, Plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citation omitted).

Dismissal under Fed. R. Civ. P. 12(b)(6) is improper where the complaint pleads "enough facts to state a claim [for] relief that is plausible on its face." *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 942 (N.D. Cal. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In resolving a motion to dismiss, "the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1075 (N.D. Cal. Sept. 7, 2023).

Rule 12(f) allows a court to strike from a pleading only "redundant,

4

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Generally, "class allegations are not tested at the pleading stage and are instead scrutinized after a party has filed a motion for class certification." *Yastrab v. Apple Inc.*, 2015 WL 1307163, at *8 (N.D. Cal. Mar. 23, 2015) (collecting cases). And "any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007).

## ARGUMENT

## I. PLAINTIFF HAS ARTICLE III STANDING BECAUSE HE ADEQUATELY ALLEGES INJURY AND TRACEABILITY.

Exer argues that Plaintiff cannot establish traceability because (i) he failed to allege specific dates of his injuries and (ii) he could have received targeted ads from other websites. MTD at 12-13. But these arguments ignore the Complaint's detailed allegations and misstate the law. At the pleading stage, Plaintiff need only plausibly allege that his injury is "fairly traceable" to the challenged conduct. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011). Ultimately, Exer's challenge to Article III standing fails because Plaintiff alleges that his use of the Website resulted in the disclosure of his Private Information, establishing a direct causal chain between Exer's conduct and Plaintiff's injuries. ¶¶ 168-85

Plaintiff specifically alleges that beginning in 2016, and as recently as March 2024, he used Exer's Website, during which time Defendant's Tracking Technologies disclosed his medical information and Facebook ID to Meta and Google. ¶¶ 168-69 & 178. Plaintiff further alleges that, as a result of Exer's unlawful disclosure, he received targeted advertisements related to the very conditions he had searched for on Exer's Website. ¶¶ 180-81. Exer speculates that "hundreds of unique websites" could have caused the targeted advertisements (MTD at 13) but ignores the allegations that the targeted ads Plaintiff received specifically related to the confidential medical information that Exer received and disclosed. ¶¶168-169 &

179. Moreover, this factual challenge is inappropriate at the pleading stage, where the Court must accept Plaintiff's well-pleaded allegations as true. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (rejecting similar standing challenge where plaintiffs alleged Facebook's tracking technologies caused their injuries). Thus, Plaintiffs' allegations establish a clear temporal and causal connection between Exer's conduct and Plaintiff's injuries.

## II.    PLAINTIFF'S CLAIMS ARE LEGALLY SUFFICIENT.

### A. **Plaintiff's Claims were Tolled by Defendant's Surreptitious Installation of Tracking Technologies.**

Because Exer fraudulently concealed its conduct through its use of Tracking Technologies that are invisible on the consumer-facing portion of its Website, Plaintiff's claims were tolled by both the doctrine of fraudulent concealment and the delayed discovery rule. Defendant's argument that Plaintiff cannot invoke either fraudulent concealment or delayed discovery because the Complaint does not state specifically when he first visited Defendant's Website is mistaken. *Compare* MTD at 14 (citing Fed. R. Civ. P. 9(b)), *with Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024), 712 F.Supp.3d at 1255 (dismissing similar argument and holding that "given the type of case this is – based on defendants' use of highly technical proprietary software – and given plaintiff's clear statement that the earliest' plaintiff could have known of her injury was shortly before filing" was sufficient to toll the statute of limitations). Plaintiff here similarly alleges the earliest he could have known of his injury—June 2024, ¶ 186, and thus his claims are not time-barred..

The statute of limitations is an affirmative defense pursuant to which a claim may be dismissed as time-barred only if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). Whether the discovery rule applies is generally a "question of fact unless the

evidence can support only one reasonable conclusion." *Ovando v. Cnty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008).

First, Plaintiff's claims were tolled due to the delayed discovery rule. To trigger the discovery rule, a plaintiff need only plead "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005). Plaintiff pleads the time and manner in which he discovered his claims sufficient to establish that the delayed discovery rule applies. ¶ 186 ("Plaintiff did not know (and had no way of knowing) that their PII and/or PHI was intercepted and unlawfully disclosed to Facebook, Google and potentially other third parties because Defendant kept this information secret. Plaintiff became only became aware of the disclosure of his information in June 2024.").

As another court in this district held in *Desert Care*, allegations that a defendant has secretly stored pixels on a webpage and prevented discovery of the pixel are sufficient to toll the statute of limitations at the pleading stage. *See* 2024 WL 1343305, at *5. As in *Desert Care*, Plaintiff here alleged that the technological complexity and secrecy of Defendant's Tracking Technologies prevented him from discovering the interception. *See, e.g.*, ¶¶ 53 & 186. For example, Defendant's pixel "effectively opened a hidden spying window into each patients' web browser," while the user only sees the contents of the webpage. ¶¶ 53-54. Because Defendant deliberately hid its tracking pixel in its Website's code, an ordinary user could not reasonably uncover the cause of action. ¶ 186; *see also A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143, at *1 (N.D. Cal. Oct. 25, 2024) (holding that delayed discovery rule tolled statute of limitations where defendant installed identical tracking technologies); *Doe v. Fullstory, Inc*, 712 F.Supp.3d 1244, 1255-56 (N.D. Cal. 2024) (statute of limitations tolled where defendant used embedded pixels to track plaintiff's browsing).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

Second, Plaintiff's claims are also tolled by the doctrine of fraudulent concealment because (i) Exer took affirmative steps to mislead Plaintiff, (ii) Plaintiff lacked actual or constructive knowledge of his claim, and (iii) Plaintiff acted diligently in uncovering the basis of his claim. *See, e.g.*, *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (defining standard).

Here, Exer took affirmative steps to hide its tracking activities from its users. Specifically, Exer embedded invisible Tracking Technologies that were deliberately designed to operate without users' knowledge or consent. *See, e.g.*, ¶¶ 5-6, 27 & 53. In doing so, Exer surreptitiously tracked patients' web activity, including the scheduling, location, and purpose of medical appointments. ¶¶ 12 & 38. Exer disguised this illicit surveillance through sophisticated technical means. ¶¶ 61, 57-58 & 72. Exer also failed to provide any notice to its patients, including in its privacy policy, that it was collecting their sensitive medical information. ¶ 93-98.

Moreover, Plaintiff lacked actual and constructive knowledge of his claim. Plaintiff could not have discovered Defendant's violations of the law earlier because its Tracking Technologies were deliberately hidden from view and were beyond the capacity of the average consumer to investigate or discover. *See, e.g.*, ¶ 53. Courts have recognized that similar technical deception prevents users from acquiring notice of privacy violations. *See, e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1071 (N.D. Cal. 2021) (tolling claims where defendant's tracking methods were not apparent to users and its privacy policy failed to disclose the full scope of tracking).

Once Plaintiff discovered Exer's conduct in June 2024, he acted promptly by filing this action shortly thereafter on July 19, 2024. ¶ 186. Because Plaintiff acted diligently to discover Exer's wrongful conduct as soon as he had reason to suspect such conduct, and then took prompt legal action, the statute of limitations should be tolled. Exer's arguments should be denied at this stage of the litigation. *See Gershezon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22,

1    2023) (holding "the question of tolling cannot be decided on the pleadings"). [4]

2    **B. The *AHA* Decision does not Support Granting Defendant's Motion.**

3    Exer argues that the HHS Guidance has been vacated by the *AHA* decision

4    and cannot support Plaintiff's claims. MTD at 16-17. However, because Plaintiff's

5    claims are based on long-standing obligations that were not created by the HHS

6    Guidance nor impacted by the *AHA* decision, Defendant's reliance on it is misplaced.

7    First, whereas Defendant argues that Plaintiff's alleged HIPAA violation is

8    "based on" the vacated guidance, Plaintiff cites the guidance to highlight the

9    protected nature of the health information Exer disclosed. *Compare* MTD at 16, *with*

10   ¶ 42. Plaintiff is not suing Defendant for violating the HHS Guidance but for

11   violating state and federal wiretapping statutes, California state law, and common

12   law. Thus, whether a portion of the HHS Guidance was vacated does not resolve the

13   merits of Plaintiff's well-pled allegations.

14   Additionally, the court in *AHA* vacated the HHS Guidance only in part that

15   concerned the transmission of **IP addresses** combined with a visit to an

16   **unauthenticated public webpage** addressing health conditions or healthcare

17   providers (called the "Proscribed Combination"). *See* 2024 WL 3075865, at *12.

18   However, HIPAA's statutory framework and the factual allegations in this case

19   provide an independent basis for Plaintiff's claims. As Judge Pittman noted, his

20   opinion concerns *only* the "Proscribed Combination." *Id.* at *17, n. 8. Indeed, Judge

21   Pittman observed that the HHS guidance "contains an array of guidance for covered

22   entities, much of which is both legally and pragmatically sound." *Id.* at *4, n. 3.

23   Here, Plaintiff's claims depend on information that is within the statutory

24

25   [4] Defendant's other supporting cases are inapposite. *See* MTD at 15. The complaint

26   in *Brodsky v. Apple Inc*. fails to allege when any wrongdoing took place. *See* 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020). Similarly, in *Ning Xianhua v. Oath Holdings, Inc.*, the plaintiff failed to include any relevant dates in his complaint, unlike the

27   present complaint. *Compare* 536 F. Supp. 3d 535, 558 (N.D. Cal. 2021), *with* ¶ 186

28   (discovery of claim in June 2024).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

definition of IIHI and is therefore protected by HIPAA. *See* ¶ 102 (citing 42 U.S.C. § 1320(d)(6) (defining IIHI)). IIHI encompasses "any information … related to the past, present, or future physical or mental health or condition of an individual" when combined with identifying elements. 45 C.F.R. § 160.103; *see also A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *4 (N.D. Ill. Sept. 9, 2024) (holding that "information about [patients'] medical appointments and treatments" transmitted through online trackers qualifies as IIHI).

Moreover, Exer used Tracking Technologies to collect and disclose IIHI including Plaintiff's searches for symptoms, test results, and diagnoses, his use of the Website to book medical appointments and communicate information about injuries and conditions, and his communications regarding test results and medical care. ¶¶ 171-74. The Tracking Technologies transmitted Plaintiff's sensitive health information alongside his Facebook ID and other identifying information, making it personally identifiable. ¶¶ 178-79. This combination of specific health information and identifying elements plainly qualifies as IIHI under HIPAA's statutory definition. *See* ¶ 106 (citing 42 U.S.C. §§ 1320d-1320d-9 ("Part C")).

Ultimately, the *AHA* decision does not undermine the HHS Guidance prohibiting Exer's disclosures at issue here, let alone suggest that such disclosures do not violate HIPAA. Indeed, Judge Pittman recognized that in situations where disclosures *would* reveal PHI, HHS "[c]an and should remind covered entities that the Privacy Rule would apply in those circumstances." *AHA*, 2024 WL 3075865, at *14. Because Defendant's Tracking Technologies captured specific patient health-related data and appointment scheduling, Plaintiff's claims are unaffected by the change in HHS guidance.[5]

---

[5] Courts ruling on similar cases after *AHA* have not found the change in HHS Guidance dispositive. *See, e.g.*, *M.G. v. Therapymatch, Inc*, 2024 WL 4219992, at *3-7 (N.D. Cal. Sept. 16, 2024) (upholding at the pleading stage privacy claims

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

**C. Plaintiff's Disclosed Information is Personally Identifiable.**

Exer's argument that the Private Information it transmitted and disclosed to Meta was not personally identifiable (MTD at 17-19) is contrary to the Complaint's allegations and decisions from courts in this district that have held that a plaintiff's Facebook ID is PII. *See, e.g.*, *Walgreen*, 733 F. Supp. 3d at 890 ("The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user. The Court therefore concludes that Plaintiffs have adequately alleged that the information at issue was personally identifiable.") (cleaned up); *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (finding Facebook ID was personally identifiable).

Here, Plaintiff alleges that Exer disclosed his Facebook IDs which enabled Meta to directly identify specific patients and target them with ads related to their specific medical conditions. ¶¶ 142, 144 & 181. As evidenced by the targeted medical advertising Plaintiff received, the combination of Plaintiff's Facebook ID with his medical searches was more than sufficient to personally identify him. ¶ 181 Plaintiff's real-world identification demonstrates that these identifiers, when combined with medical data, create "a reasonable basis to believe the information can be used to identify the individual." *See* 45 C.F.R. § 160.103. This focus on actual identification capabilities aligns with how Ninth Circuit courts have analyzed similar issues. *See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) (finding that unique persistent identifiers combined with other information constitutes PII because it enables identification of specific persons). Exer's arguments regarding the identifiability of the IP Addresses and Facebook IDs are red herrings which ignore controlling case law's focus on the actual result of disclosing unique identifiers. When used in combination, the information disclosed

---

based on use of a healthcare website); *St. Aubin v. Carbon Health Techs. Inc.*, 2024 WL 4369675, at *4-9 (N.D. Cal. Oct. 1, 2024) (same); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *5 (E.D. Pa. Sept. 30, 2024) (same).

1 by Exer is personally identifiable and its argument to the contrary should be denied.

2 Exer cites *Heerde v. Learfield Communications, LLC* to argue that Facebook

3 IDs cannot identify users unless their profiles are public. MTD at 18. But *Heerde* is

4 an outlier decision regarding violations of the Video Privacy Protection Act and did

5 not include allegations that plaintiff was sent advertisements targeted to specific

6 health conditions. *See* 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024). In contrast

7 to *Heerde*, here Exer disclosed Plaintiff's Facebook ID and appointment details,

8 leading to Plaintiff being personally identified and targeted to receive advertisements

9 based on his specific medical conditions. ¶¶ 42-43 & 181. Nor does Exer's reliance

10 on Facebook's marketing materials describing Facebook IDs as "not personally

11 identifying" defray liability, as this self-serving description ignores how Facebook

12 IDs function and courts analyze such identifiers in practice. *Compare* MTD at 17-

13 18, *with In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 283 (3d Cir. 2016)

14 (looking to how identifiers are actually used in combination to identify individuals)

15 & *In re Hulu Privacy Litig.*, 2014 WL 1724344, at *16 (N.D. Cal. Apr. 28, 2014)

16 (finding that a cookie containing a user's Facebook ID could be PII where the ID

17 could be matched to a user).

18 Exer also argues that Plaintiff's information is not PII because Plaintiff did

19 not state whether his IP address was dynamic or static. MTD at 17. However, a web-

20 based identifier may become PHI when, like here, its combination with health

21 information permits identification of a patient. *See AHA*, 2024 WL 3075865, at *12-

22 13. Plaintiff's claims are supported in part by HIPAA, which defines PII as

23 information that could reasonably be used to identify a patient and the patient's

24 sensitive health information. *See* 45 C.F.R. § 160.103; 42 U.S.C. § 1320d(6); *see*

25 *also In re Hulu Privacy Litig.*, 2014 WL 1724344, at *11 (holding that persistent

26 identifiers become PII when combined with information allowing identification of

27

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

specific persons).[6]

## D. **Plaintiff's ECPA and CIPA Claims are Sufficiently Pled Because they Allege the Applicability of the Crime-Tort Exception.**

Plaintiff alleges that Exer violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq*. and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 *et seq*., which forbid (i) interception of electronic communications, (ii) disclosure of electronic communications and (iii) using the contents of those electronic communications. *See* ¶¶ 205-57. Exer argues that there can be no ECPA liability because it was a party to the communications at issue. See MTD at 20--21. But where the crime-tort exception applies, that exception overrides the one-party consent rule.

Courts analyze claims under CIPA and ECPA using the same framework because the statutes contain similar provisions protecting against unauthorized interception of communications. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797-98 (N.D. Cal. 2022) (explaining the standard) (collecting cases). ECPA and CIPA both include two key exceptions: (i) the party exception, which permits interception when done by a party to the communication or with a party's consent and (ii) the crime-tort exception, which negates the party exception when the purpose of the interception is to commit a criminal or tortious act. Although Exer was a party to the communications with its Website, the crime-tort exception bars the party defense because Exer's purpose in intercepting these communications was to knowingly violate HIPAA's criminal provisions, which prohibit disclosure of

---

[6] Exer's citations on the definition of PII are not on point. For example, *Johnson v. Microsoft Corporation* deals with "personally identifiable information" within the context of Microsoft's End User License Agreement, not the term's defined meaning under HIPAA. *See* 2009 WL 1794400, at *4 (W.D. Wash. June 23, 2009). And *Criminal Productions, Inc. v. Doe-72.192.163.220* distinguishes between static and dynamic IP addresses, but ultimately finds that either address can be personally identifiable ***when used in conjunction*** with other information, such as geolocation data. 2016 WL 6822186, at *2 (S.D. Cal. Nov. 18, 2016).

1  IIHI. ¶¶ 100-10.

2       Here, Exer argues that the crime-tort exception cannot apply because the

3  criminal or tortious purpose was not separate and independent from the interception.

4  *See* MTD at 21-24. But Exer misunderstands the Complaint. Plaintiff alleges that

5  Defendant's disclosure of Plaintiff's Private Information was separate and

6  independent from its interception. *See, e.g.*, ¶¶ 11, 43, 67, 177 & 221-31 (explaining

7  Exer violated wiretap acts by "intentionally disclosing or endeavoring to disclose

8  the electronic communications of Plaintiff and Class Members to affiliates and other

9  third parties, while knowing or having reason to know that the information was

10 obtained through the interception of an electronic communication"). Plaintiffs'

11 allegations of disclosure—independent and separate from the interception—when

12 done with the purpose of committing a criminal or tortious act (invading Plaintiff's

13 privacy and violating HIPAA) suffice to plausibly allege the crime-tort exception.

14 *See, e.g.*, *Walgreen*, 733 F. Supp. 3d at 901 (recognizing that "a plaintiff must plead

15 sufficient facts to support an inference that the offender intercepted the

16 communication for the purpose of a tortious or criminal act that is ***independent*** of

17 the intentional act of recording or interception itself" and holding that crime-tort

18 exception applied because communications were intercepted with intent to commit

19 the tort of invasion of privacy) (emphasis in original); *Desert Care*, 2024 WL

20 1343305, at *6 (holding one-party exemption did not apply because "[d]efendants

21 disclosed these communications to Meta in violation of various state tort claims and

22 state and federal laws"); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at

23 *5 (W.D. Wash. Nov. 14, 2024) ("The Court concludes that alleging a defendant

24 intercepted data to use the data in violation of criminal or tort laws suffices to invoke

25 the crime-tort exception."); *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 2037404, at *4

26 (C.D. Cal. Apr. 11, 2024) (acknowledging that a violation of HIPAA can constitute

27 independent conduct such that the crime-tort exception would apply); *Caro v.*

28

**14**

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

*Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (finding that "if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act.").[7]

Additionally, Exer's reliance on *Doe v. Kaiser Foundation Health Plan, Inc.* is mistaken. MTD at 22 (citing 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)). Unlike here where Plaintiff alleges that Exer knowingly disclosed Private Information to third parties, in *Kaiser* there was no allegation that defendant knew and/or approved of third parties collecting or using information for their own purposes. *Compare id.*, *with* ¶ 221-23. As the *Kaiser* court explained, "the remainder of this order addresses Plaintiffs' claims as based on the factual scenario in (1) –*i.e.*, that Kaiser hired third parties to collect and/or use information for the benefit of Kaiser," essentially hiring the third parties as vendors 2024 WL 1589982, at *7. Here, Plaintiff alleges that Exer intercepted his communications for the purpose of disclosing that information to third parties so that those third parties could use the information to provide advertising for their own benefit and in violation of HIPAA. *See* ¶¶ 219-20.[8]

Finally, whether Exer had criminal or tortious intent when intercepting Plaintiff's communications is a factual question for discovery or an evidentiary record before being decided by the Court. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *3 (N.D. Cal. Sept. 7, 2023) (noting the intent inquiry turned on "disputed questions of fact that need development on a full evidentiary record");

---

[7] In setting forth the crime-tort exception, the ECPA expressly distinguishes between the interception of communications and a separate criminal or tortious purpose by providing that the communication must be "intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d).

[8] *Okash v. Essentia Health*, 2024 WL 1285779, at *5 (D. Minn. Mar. 26, 2024) is also inapposite. In *Okash* is an outlier in Minnesota, relied on an outdated analysis in *Kurowski v. Rush System for Health*, and permitted plaintiff leave to amend. *Id.* (granting leave to amend "to allow Okash to plead an independent connection to a tortious act, should one exist.").

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

*In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023) ("[D]etermination of [defendant]'s actual purpose for . . . using the Pixel Code requires a factual undertaking.") (emphasis in original).[9] As such, Defendant's motion to dismiss should be denied.

### E. **Plaintiff Sufficiently States a CMIA Claim.**

Exer argues that Plaintiff's allegations regarding the intercepted medical information were insufficiently specific to meet the statutory definition of individually identifiable under the CMIA. MTD at 24-26. But Exer, again, ignores Plaintiff's allegations which detail his medical information disclosed sufficiently to meet the CMIA threshold.

Another court in this district recently addressed this issue, holding that a healthcare provider violates CMIA when it discloses URLs containing information about patients' specific medical appointments and conditions to Facebook through the Meta Pixel. *See St. Aubin*, 2024 WL 4369675, at *9-10. *The St. Aubin* Court found that transmitting URLs that reveal "information regarding the specific symptoms, physical condition, or course of treatment of an individual" states a viable CMIA claim. *Id.* at *8.

Here, Plaintiff identifies the specific medical conditions Exer disclosed through detailed URLs, search terms, and medical appointment scheduling

---

[9] Exer's argument that that Plaintiff alleges that the primary purpose of intercepting his communications was to make money is also unavailing. As courts in this district have found, "even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims." *Walgreen,* 733 F. Supp. 3d at 901; *see also Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928, n.4 (D. Minn. 2024) ("[T]he Court has serious doubts that a pecuniary purpose and an injurious purpose can always be so clearly distinguished. And it defies common sense that a clearly harmful act could escape liability as long as it was done for profit.").

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

information (including both time and location) to third parties. ¶¶ 69-84 & 168-69.[10] Plaintiff's allegations also specify the exact information disclosed and the method of transmission, noting how Exer transmitted medically sensitive messages alongside unique identifiers, thereby allowing Facebook and other third parties to connect that medical information to Plaintiff's identity. *See, e.g.*, ¶¶ 178-79.

In contrast, Exer's cited cases do not support their contention that Plaintiff's claims are insufficiently specific. In *B.K. v. Eisenhower Medical Center*, the court dismissed CMIA because after finding that plaintiffs failed to specify "what medical information was allegedly disclosed or when it was disclosed." 2024 WL 878100, at *3 (C.D. Cal. Feb. 29, 2024); *see also Doe v. Davita Inc.*, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024) (dismissing CMIA claim because plaintiffs failed to "state what information they each provided to defendant, via their browsing activity, that was subsequently disclosed to Meta"). As explained, Plaintiff's allegations here are more fulsome and rise to the level of specificity required under CMIA.

**F.** **Plaintiff has Plausibly Pled Invasion of Privacy by Showing a Reasonable Privacy Interest and a Highly Offensive Intrusion.**

Plaintiff adequately alleges that Defendant's interception of his personal medical data through its use of Tracking Technologies was an invasion of his privacy under both the California Constitution and common law.[11] Plaintiff had a reasonable

___

[10] As explained above, both the Facebook ID and the IP Address Exer disclosed are personally identifiable. *See In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 283 (3d Cir. 2016) (static digital identifiers that could, in theory, be combined with other information to identify a person do not count as 'personally identifiable information'...at least by themselves").

[11] These causes of action can be evaluated together because each depends on showing that "(i) there exists a reasonable expectation of privacy and (ii) the intrusion was highly offensive." *In re Facebook, Inc. Consumer Priv. Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019); *see also McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1037 (N.D. Cal. 2019) ("It is appropriate to assess [violations of privacy under the California Constitution and intrusion upon seclusion] together and

expectation that his healthcare provider would keep information about his medical conditions and treatment confidential. *See, e.g.*, ¶¶ 69, 93 & 98. And Plaintiff reasonably expected that such information would not be disclosed to a third party without his knowledge or consent. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 783-86 (finding a reasonable expectation of privacy in information protected under HIPAA where collection was not disclosed in defendant's privacy policy); *Walgreen*, 733 F. Supp. 3d at 893 (holding that disclosure of personal health data was highly offensive, as element of invasion of privacy claim).[12]

The court in *Desert Care* held that plaintiffs have a protected privacy interest in personal medical information. *See* 2024 WL 1343305, at *9 ("Plaintiffs have adequately alleged the disclosure of certain personal medical information to Meta. Patients' right to privacy in their medical records "is well-settled.") (internal citation omitted). Defendant, without Plaintiff's consent, disclosed his PHI to third-party digital advertising companies, such as Facebook. ¶ 9. As a result, Plaintiff was targeted with advertising about his sensitive PHI and IIHI. ¶¶ 82-84 & 186; s*ee also Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d at 794 ("[T]he collection of protected health information from a medical provider is a different matter entirely" than collecting general browsing data); *Doe v. Regents of University of California,* 672 F.Supp.3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person").

Defendant's attempt to compare Plaintiff's allegations to interceptions of general browsing data fall short. *See* MTD at 28 (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (finding no reasonable privacy interest in "general health information ... accessible

---

examine the largely parallel elements of these two claims.") (cleaned up).

[12] Notably, Defendant's privacy policy did not disclose that it would share Plaintiff's or other users' HIPAA-protected information. ¶¶ 93-99.

to the public at large"). Plaintiff's allegations involve distinct, personally identifiable medical information—PHI and IIHI—that are not available to the public, namely his reason for seeking medical care and appointment booking. ¶ 178. Defendant's invasion of Plaintiff's privacy is plainly highly offensive. *See, e.g.*, *Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795 (interception of patient-specific health data is highly offensive); *Grafilo v. Wolfsohn*, 33 Cal. App. 5th 1024, 1034 (2019) (right to privacy in medical information is "well-settled" under California law); *Am. Acad. of Pediatrics v. Lungren* 16 Cal.4th 307, 340 (1997) (medical information among the most private and protected categories of data).[13]

Here, Plaintiff alleges that Defendant tracked and disclosed deeply personal information about his health conditions to unauthorized third parties without consent. *See, e.g.*, ¶¶ 8, 31, 66 & 241. Plaintiff's allegation that Defendant used his PHI and IIHI for targeted advertising emphasizes the egregious nature of this intrusion. *See* ¶ 6; *see also St. Aubin*, 2024 WL 4369675, at *13 (finding interceptions of private healthcare information for marketing purposes to be an egregious invasion of privacy); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. 2021) (finding highly offensive invasion of privacy where defendant represented that medical data would not be disclosed). Accordingly, Plaintiff's allegations are sufficient to plead a highly offensive invasion of privacy.[14]

---

[13] Defendant's cited cases supporting the "high bar" for this element are readily distinguishable as they do not reference sensitive medical data, MTD at 29 (citing *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (concerning general iPhone user information); *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (discussing social security numbers)). Defendant also cites *Tanner v. Acushnet Company*, where the court denied a motion to dismiss invasion of privacy claims where Defendant collected general browsing data. *See* 2023 WL 8152104 at *7 (C.D. Cal. Nov. 20, 2023).

[14] Where plaintiffs plead sufficient facts, an inquiry into whether information is "highly offensive" is "not suitable for resolution at the pleading stage." *Desert Care*, 2024 WL 1343305, at *9.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

## III.    DEFENDANT'S MOTION TO STRIKE IS PREMATURE AND FAILS TO MEET THE STANDARDS OF RULE 12(F).

As courts in this district have held, "determining whether to certify a class is normally done through a motion for class certification under Rule 23." *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012). This is because such a motion to strike, like the one filed by Defendant, circumvents Rule 23 by asking courts to determine the validity of a class action without the benefit of discovery or a motion for class certification. *See, e.g.*, *Velasco v. SEI Pharms., Inc.*, 2013 WL 2444646, at *4 (S.D. Cal. June 5, 2013) (stating that "issues related to class suitability are more appropriately reserved for a motion for class certification"). Because Exer has not met its burden under Rule 12(f) of demonstrating that the class allegations they seek to strike are "redundant, immaterial, impertinent, or scandalous," Defendants' arguments seeking to strike must be denied. *See, e.g.*, *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007) ("Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike.")

### A. Striking Plaintiff's Class Allegations is Premature.

Plaintiff's class allegations raise complex factual questions about Exer's data collection practices that require discovery to properly evaluate the claims and should be ruled on by the Court only once discovery is completed. Motions to strike class allegations are "disfavored" and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *4 (C.D. Cal. June 24, 2016). Far from meeting this standard, Exer's arguments rely on speculative concerns about identifying class members that ignore the extensive electronic records available to them through discovery. MTD at 31.[15]

---

[15] Courts routinely permit privacy class actions to proceed past the pleading stage

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

In this case, the operation of Exer's Tracking Technologies cannot be fully understood at the pleading stage without the benefit of discovery. It is "in fact rare to [strike class allegations] in advance of a motion for class certification." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011). Exer's reliance on Rule 12(f) to avoid "expenditure of time and money" on class discovery ignores that early dismissal is only appropriate where class certification is legally impossible, not merely questionable. *See Underwood v. Future Income Payments, LLC*, 2018 WL 4964333, at *5 (C.D. Cal. Apr. 26, 2018). Here, discovery of Exer's records, Facebook's data, Google's data, and data from other third-party vendors who received information through the Tracking Technologies will likely resolve the very ascertainability concerns Exer raises. *See* ¶¶ 4-5, 69-70 & 91.

The appropriate time to evaluate class certification is after the parties have developed a factual record about how Exer's Tracking Technologies operated and what records exist to identify affected individuals. Exer's motion to strike should therefore be denied.

### B. **Plaintiff's Proposed Class Fulfills the Rule 23 Requirements at the Pleading Stage.**

Plaintiff's proposed class nevertheless meets the class action pleading requirements. To maintain a class action, Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation and Rule 23(b)(3) requires that common questions predominate over individual issues. Fed. R. Civ. P. 23(a); 23(b)(3). Exer's argument that individual issues predominate mischaracterizes the

---

where, as here, evidence of the challenged practices lies primarily within the defendant's control. *See, e.g.*, *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 189-90 (N.D. Cal. 2019) (denying motion to dismiss privacy claims where evidence of Google's tracking practices was within its exclusive control); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 954 (N.D. Cal. 2022) (holding that privacy claims could proceed at pleading stage where the "relevant evidence [was] almost exclusively within Google's possession").

21

fundamental nature of this privacy litigation. Rather than requiring individual proof from each class member, the core questions of liability—whether Exer's Tracking Technologies intercepted communications and transmitted PII, PHI, and IIHI without authorization—will be proven through common evidence about Exer's uniform practices. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598 (finding common questions predominated where claims centered on Facebook's uniform practice of tracking users' browsing histories without authorization).

Exer's claimed need for individualized inquiry into patient status, website visits, and receipt of targeted advertising is also misplaced. MTD at 33-34. Privacy violations based on systematic data collection practices are particularly suited for class treatment precisely because the defendant's conduct and technical infrastructure are uniform across the class. *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015); *In re Facebook Internet Tracking Litig.*, 956 F.3d at 599 (noting superiority of class treatment for technical privacy claims).

The availability of statutory damages under CIPA, ECPA, and CMIA, support class treatment by providing a standardized method of calculating damages. While Exer argues that individual damages variations defeat certification, the Ninth Circuit has held that the "presence of individualized damages calculations" does not defeat predominance where, as here, liability can be established through common proof. *Compare* MTD at 34, *with Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022); *see also In re Anthem, Inc. Data Breach Litigation*, 327 F.R.D. 299, 313-314 (N.D. Cal. 2018) (explaining that variations in individual damages do not preclude class certification because class actions are often the only practical mechanism for addressing widespread privacy violations, particularly where systemic practices or failures are at issue).

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

### C. **Plaintiff's Proposed Class is Readily Ascertainable.**

As to Exer's argument regarding ascertainability, district courts in this circuit require only that class membership be ascertainable through objective criteria—there is no requirement that every class member be identified at the pleading stage. *See, e.g.*, *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 212 (N.D. Cal. 2012) (holding that precise identification of all class members is not required at the pleading stage where membership can be determined through objective criteria). Plaintiff's proposed class is ascertainable through objective evidence and records that are in Exer's possession or obtainable through third-party discovery. Exer's argument that IP addresses and Facebook IDs alone cannot identify class members, or that potential class members were not all required to provide contact information, ignores such objective evidence as Exer's own records of users' requests for appointments, Facebook's records of data received through the Pixel, and records of targeted advertising campaigns using the collected data. *Compare* MTD at 35, *with, e.g.*, ¶¶ 27-29, 74-77 & 83-85.The fact that class members may need to be identified through multiple data sources does not defeat ascertainability.

Finally, Exer's concerns about temporal limitations are misplaced. Class definitions at the pleading stage may be bounded by the applicable statute of limitations periods, with precise start dates to be determined through discovery. *See Vietnam Veterans of Am.*, 288 F.R.D. at 212. Here, discovery will reveal when Exer began using the Meta Pixel and other Tracking Technologies, allowing the class period to be precisely defined. The mere need to establish temporal parameters through discovery does not render the class unascertainable at the pleading stage. *See In re Yahoo! Litig.*, 251 F.R.D. 459, 469-70 (C.D. Cal. 2008).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss. If the Court determines any claim is inadequately pled, Plaintiff

23

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS

1  respectfully requests leave to amend. *See U.S. ex rel. Lee v. SmithKline Beecham,*

2  *Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("[L]eave to amend should be granted

3  unless the district court 'determines that the pleading could not possibly be cured by

4  the allegations of other facts'").

5

6  Dated: January 8, 2025

7                                                                **ALMEIDA LAW GROUP LLC**

8                                                                */s/ Matthew Langley*

9                                                                Matthew Langley (SBN 342846)
                                                                 **ALMEIDA LAW GROUP LLC**
10                                                               849 W. Webster Avenue

11                                                               Chicago, Illinois 60614
                                                                 t: 708-529-5418
12                                                               matt@almeidalawgroup.com

13                                                               *Counsel for Plaintiff & the Proposed*

14                                                               *Classes*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CLASS ACTION COMPLAINT & MOTION TO STRIKE CLASS ALLEGATIONS