UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-06099-AH-(AJRx) | Date | January 30, 2025 |
| Title | Nick Gaige v. Exer Holding Company, LLC | | |

Present: The Honorable   Anne Hwang, United States District Judge

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):  Attorney(s) Present for Defendant(s):

None Present                             None Present

**Proceedings:** **(IN CHAMBERS) ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS [22], AND DENYING DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

The matter before the Court is Defendant Exer Holding Company, LLC's ("Defendant") Motion to Dismiss Nick Gaige's ("Plaintiff") Class Action Complaint and Motion to Strike Class Allegations. Plaintiff brought this lawsuit on behalf of himself and all others similarly situated ("Class Members"). The matter is fully briefed, and the Court heard oral argument on January 29, 2025. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss, and DENIES Defendant's Motion to Strike.

I.  **BACKGROUND**

Defendant operates, controls, and manages over fifty-five clinics across the Los Angeles area. Compl. ¶ 4, Dkt. No. 1. Defendant also owns and controls the website exerurgentcare.com and its webpages (the "Website"). *Id.* Plaintiff alleges that unbeknownst to its patients, Defendant installed the Meta Pixel ("the Pixel"), Facebook SDK, Facebook Conversions API, and other third-party tracking technology (collectively "Tracking Technologies") on its Website, which intercepted and transmitted patients' sensitive communications to third parties like

Meta Platforms, Inc. ("Meta")[1] and Google. *Id.* ¶¶ 4–7. The Tracking Technologies allowed these and other third parties to intercept the contents of patient communications, view patients' private information, mine it for purposes unrelated to healthcare, and monetize it to deliver targeted advertisements. *Id.* ¶ 6.

Defendant encourages its patients to use its Website to: (i) book medical appointments; (ii) locate urgent care and primary care facilities; (iii) pay bills; (iv) research medical treatment options; and (v) review information related to their medical health conditions. *Id.* ¶ 7. Plaintiff has been a patient of Defendant since 2016 and disclosed his private information to Defendant by using the Website on several occasions, including as recently as February and March 2024. *Id.* ¶¶ 168–69. Through its Tracking Technologies, Defendant transmitted Plaintiff's Facebook ID, computer IP address, and other personal identifiers to Meta alongside his health and medical information. *Id.* ¶¶ 177–81.

Plaintiff never consented to Defendant disclosing his private information to third-party companies. *Id.* ¶¶ 179–80. Plaintiff, following his use of the Website, started receiving targeted advertisements related to his specific medical conditions on his Facebook or Instagram accounts. *Id.* ¶ 181. Defendant's privacy policy promised patients that it would keep patients' personal information confidential and would only disclose this protected information under certain circumstances. *Id.* ¶¶ 93–97.

As a result, on July 19, 2024, Plaintiff filed this class action lawsuit against Defendant, alleging six causes of action: (1) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), *et seq.*; (2) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.*; (3) violation of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56, *et seq.*; (4) violation of California's Constitution, Article 1 § 1; (5) common law invasion of privacy; and (6) unjust enrichment. *See generally id.*

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted[.]" Fed. R.

---

[1] The Court refers to Meta by its legal name and uses the term "Facebook" only in reference to Meta's social media platform.

Civ. P. 12(b)(6). A dismissal under a 12(b)(6) motion can be based on either a "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citation omitted). On a 12(b)(6) motion, courts accept as true all well-pleaded allegations of material fact and construe them in a light most favorable to the non-moving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030−31 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not" suffice. *Id.* (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 545. A court may consider the allegations contained in the pleadings, as well as exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice in ruling on a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Leave to amend a dismissed complaint should be granted unless it is clear the complaint cannot be saved by any amendment. Fed. R. Civ P. 15(a); *see Manzarek*, 519 F.3d at 1031. A "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). Otherwise, leave to amend shall be "freely give[n]…when justice so requires." Fed. R. Civ. P. 15(a)(2).

### III.  DISCUSSION

Defendant moves to dismiss all of Plaintiff's six causes of action. Defendant argues that Plaintiff lacks Article III standing to challenge Defendant's conduct; that Plaintiff's Complaint is time barred; that Plaintiff relies on vacated authority; and that Plaintiff has failed to state a claim upon which relief may be granted. *See generally* Mot. to Dismiss, Dkt. No. 22. Alternatively, Defendant argues that Plaintiff's class allegations must be stricken or that Plaintiff must be compelled to amend its class definition. *See generally id.* The Court addresses each of Defendant's arguments below.

### A. Plaintiff Has Article III Standing

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and [] (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (quoting *id.* at 560–61).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Lujan*, 504 U.S. at 561 (citation omitted). "[P]laintiffs must establish a line of causation between defendants' action and their alleged harm that is more than attenuated." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (internal quotation marks and citation omitted). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

Defendant argues that Plaintiff cannot establish traceability because he failed to allege the specific dates of his injuries and that he could have received targeted advertisements from other websites.[2] Mot. to Dismiss at 2–3. The Court disagrees. Plaintiff alleges that beginning in 2016, and as recently as February and March 2024, he used Defendant's Website, which resulted in Defendant's Tracking Technologies disclosing Plaintiff's medical information and Facebook ID to Meta and Google. Compl. ¶¶ 168–69, 178–80. Plaintiff also alleges that Defendant's disclosures led to him receiving targeted advertisements related to the very conditions he had searched the Website. *Id.* ¶¶ 180–81. The Court finds these general factual allegations of injury sufficient for purposes of traceability of the challenged action to Defendant, as the line of causation is more than just "attenuated."

---

[2] In its Reply, Defendant raises for the first time that Plaintiff's allegations are premised on false factual assertions. Reply at 1–3; Dkt. No. 32. However, the Court declines to consider facts outside the pleadings or what is judicially noticeable. *See U.S. v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). Moreover, two days before the hearing, Defendant filed an Amended Reply without indicating what was changed. The Court refers to the Original Reply (Dkt. No. 32).

Thus, Plaintiff has Article III standing.

**B.     Dismissing Plaintiff's Complaint as Time Barred Would Be Premature**

Plaintiff argues that his claims were tolled because of the delayed discovery rule and because of Defendant's fraudulent concealment of its conduct. Opp'n at 6–8, Dkt. No. 31.

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute [of limitations] is apparent on the face of the complaint." *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (internal quotation marks and citation omitted). "A motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995) (internal quotation marks and citation omitted).

The delayed discovery rule tolls the statute of limitations, which requires the plaintiff to plead facts which show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Yumul v. Smart Balance, Inc.*, 733 F.Supp.2d 1117, 1130 (C.D. Cal. 2010) (internal quotation marks and citation omitted).

Plaintiff alleges that he did not know and had no way of knowing that his personally identifiable information ("PII") and/or personal health information ("PHI") was intercepted and unlawfully disclosed to Meta, Google, and potentially other third parties because Defendant kept this secret. Compl. ¶ 186. Plaintiff became aware of the disclosure of this information in June 2024. *Id.* The Court finds these allegations sufficient to allege tolling under the delayed discovery rule, as they allege the inability to have made the discovery earlier than June 2024 despite reasonable diligence. *See B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (holding that a delayed discovery argument posed a "barrier to dismissal" when the plaintiff alleged that the defendants secretly incorporated Pixels into their web properties and patient portals).

Moreover, "a statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the

plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (citation omitted). "To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1070 (N.D. Cal. 2021) (internal quotation marks and citation omitted). "[A]llegations of fraudulent concealment must be pled with particularity." *Lynwood Invs. CY Ltd. v. Konovalov,* 2021 WL 1198915, at * 18 (N.D. Cal. Mar. 30, 2021) (internal quotation marks and citations omitted). "However, it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage." *Brown*, 525 F.Supp.3d at 1070 (internal quotation marks and citation omitted).

Here, Plaintiff alleges that Defendant took affirmative steps to hide its tracking activities, including embedding invisible Tracking Technologies that were deliberately designed to operate without users' knowledge or consent. *See* Compl. ¶¶ 5–6, 50–54, 186. Moreover, Plaintiff alleges that because of the surreptitious Tracking Technologies, he could not have discovered Defendant's conduct until June 2024, lacking actual and constructive notice. *See id.* ¶¶ 50–54, 186. Lastly, after Plaintiff discovered Defendant's conduct in June 2024, he thereafter filed this action on July 19, 2024. *Id.* ¶ 186; *see generally id*. The Court finds that these allegations sufficiently plead fraudulent concealment with particularity.

Based on these allegations, at this juncture, dismissal of Plaintiff's claims as time-barred would be premature.

### C. Relying on the *American Hospital Association* Decision Does Not Support Granting Defendant's Motion

Defendant argues that the Complaint relies on allegations that Defendant violated HIPAA based on guidance issued by the U.S. Department of Health and Human Services ("HHS"). Mot. Dismiss at 6. Defendant argues that because this guidance was vacated by the *American Hospital Association* decision, Plaintiff's claims are based on outdated legal authority. *Am. Hosp. Ass'n v. Becerra*, 2024 WL 3075865 (N.D. Tex. June 20, 2024).

However, as Plaintiff describes in his Opposition, Plaintiff's claims are not premised on a violation of the HHS guidance, but rather are based on violations of various statutes and common law. Opp'n at 9.

Thus, the HHS guidance being vacated does not affect the merits of Plaintiff's allegations.

### D.     The Information Transmitted Is Personally Identifiable

Defendant next argues that Plaintiff's Facebook ID and IP address are not personally identifiable. Mot. Dismiss at 7–9. [3] [4]

"The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user." *R.C.* v. *Walgreen Co.*, 733 F.Supp.3d 876, 890 (C.D. Cal. 2024) (internal quotation marks and citation omitted). Here, Plaintiff argues that his Facebook ID along with his health information was disclosed, which was sufficient to identify him, as he started receiving targeted medical advertising. Compl. ¶¶ 46, 178–181; Opp'n at 11. The Court agrees and concludes that Plaintiffs have adequately alleged the disclosure of personally identifiable information. Defendant relies on *Heerde* to argue that a Facebook ID cannot identify a person unless "the person's Facebook profile is publicly accessible[.]" *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024); Mot. to Dismiss at 8. However, *Heerde* did not involve a set of circumstances similar to this case, where the Facebook ID, used in combination with medical searches, led to a plaintiff receiving targeted medical advertising. *See generally Heerde*, 2024 WL 3573874.

Moreover, Plaintiff alleges that a web-based identifier, such as an IP address, combined with the medical information of a patient, may become personally identifiable when it permits the identification of a patient. Compl. ¶¶ 46, 178–181;

---

[3] The Court declines to take judicial notice at this time of the two Facebook webpages cited in Defendant's Motion to Dismiss. Mot. to Dismiss at 8. These webpages are not necessary to the resolution of the Motion. *Walsh v. SL One Glob., Inc.*, 2022 WL 3327445, at *2 n.2 (E.D. Cal. Aug. 11, 2022).

[4] In its Reply, Defendant raises for the first time arguments about health information and PHI being collected. Reply at 3–6. The Court declines to consider arguments raised for the first time in a reply brief. *See FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F.Supp.3d 1063, 1079 (C.D. Cal. 2015).

Opp'n at 12.  The Court does not find Defendant's distinction between dynamic or static IP addresses convincing, as the IP address combined with the medical information, made the IP address personally identifiable, regardless of whether it was dynamic or static.  The Court finds that Plaintiff has sufficiently alleged that the IP address, in conjunction with the other specific user information that permitted identification of him, was personally identifiable.  *See Shah v. Fandom, Inc.*, 2024 WL 4539577, at *5–*6 (N.D. Cal. Oct. 21, 2024) (holding that "Plaintiffs plausibly allege [in a motion to dismiss] that the collection of their IP addresses through the Trackers allows the third parties to obtain personally identifying, non-anonymized information, and that the IP addresses reveal geographical location and other personal information sufficient for third parties to conduct targeted advertising") (internal quotation marks and citation omitted).

### E. Plaintiff Sufficiently Pleads ECPA and CIPA Claims (Counts One and Two)

To state a claim under the ECPA, a plaintiff must show "that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *Walgreen*, 733 F.Supp.3d at 900 (citing 28 U.S.C. § 2510, *et seq*.).  "Similarly, CIPA prohibits any person from using electronic means to 'learn the contents or [] meaning' of any 'communication' 'without consent' or in an 'unauthorized manner.'" *Id.* at 901 (quoting Cal. Pen. Code § 631(a)).  "Both statutes contain an exemption from liability for a person who is a party to the communication, whether acting under the color of law or not" ("party exception").  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (internal quotation marks and citation omitted).  However, this party exception does not apply if the "communication is intercepted for the purpose of committing any criminal or tortious act[.]"  18 U.S.C. § 2511(2)(d). "Courts perform the same analysis for both the [ECPA] and CIPA regarding the party exemption."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607.

Here, Defendant argues that it was a party to the alleged communication with Plaintiff.  Mot. to Dismiss at 10–11.  The Complaint makes it clear that Defendant was a party to Plaintiff's website communications, as there was "transmission of Private Information between Plaintiff…and Defendant via its Website[.]"  Compl. ¶¶ 176, 211.  Accordingly, because Defendant was a party to the communications, receiving information from Plaintiff via its Website, the party exception would apply, preventing liability for the interception of the

communications. Plaintiff also seems to concede that Defendant was a party to the communications at issue. *See* Opp'n at 13–16.

However, Plaintiff argues that the party exception does not apply because of the crime-tort exception. *Id.* "To make use of the criminal/tortious intent exception, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself." *Walgreen*, 733 F.Supp.3d at 901 (citation omitted). "Alleged interceptions fall within the tort or crime exception only where the primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously." *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (internal quotation marks and citation omitted). It "cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money." *Id.* (internal quotation marks and citation omitted). But "the mere existence of [a] lawful purpose alone does not 'sanitize a[n interception] that was also made for an illegitimate purpose.'" *In re DoubleClick Inc. Priv. Litig.*, 154 F.Supp.2d 497, 515 (S.D.N.Y. 2001) (quoting *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999)).

Here, Plaintiff argues that the crime-tort exception applies because the "disclosure of Plaintiff's Private Information was separate and independent from its interception" and was "done with the purpose of committing a criminal or tortious act (invading Plaintiff's privacy and violating HIPAA)[.]" Opp'n at 14; Compl. ¶¶ 227–31. The Complaint alleges that the interception was done for the purpose of committing a tortious or criminal act, namely violations of HIPAA and invasion of privacy, and generally alleges intentional disclosure of such information.[5] *Id.* "A defendant's criminal or tortious purpose of 'knowingly ...

---

[5] Although not the model of pleading regarding Defendant's alleged criminal or tortious purpose, the Court finds that the Complaint here does not suffer from the same defects identified in *Doe v. Kaiser Foundation Health Plan Inc*. 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024). There, the court found insufficient allegations that "Kaiser knew and/or approved of third parties collecting and/or using information for their own purposes." *Id.* at *7. "Indeed, there is not even an allegation that Kaiser negligently failed to take steps to ensure that third parties could not collect and/or use information for their own benefit." *Id.* As such, the court rejected the argument that a violation of HIPAA was sufficient because the "argument is contrary to *Sussman* which holds that the act of interception itself

disclos[ing] individually identifiable health information to another person,' 42 U.S.C. § 1320d-6, in violation of HIPAA, may satisfy the crime-tort exception." *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *7 (S.D.N.Y. July 30, 2024) (collecting cases). Although the Complaint also alleges a financial motivation, Compl. ¶ 231, for pleading purposes at this motion to dismiss stage, the Complaint sufficiently alleges an illegitimate purpose that was at least a "determining factor" for Defendant's actions. *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13; *see Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. 2023) (the intent inquiry under the ECPA "turn[s] on disputed questions of fact that need development on a full evidentiary record").

Thus, Defendant's Motion as to Counts One and Two is denied.

### F. Plaintiff Sufficiently Pleads a CMIA Claim (Count Three)

Under the CMIA, healthcare providers "shall not disclose medical information regarding a patient of the provider of health care…without first obtaining an authorization, except as provided in subdivision (b) or (c)." Cal. Civ. Code § 56.10(a)–(c). A healthcare provider that "creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein." *Id.* § 56.101(a). "A health care provider who 'negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information' is subject to liability under the CMIA." *Desert Care Network*, 2024 WL 1343305, at *5 (quoting *Id.* § 56.101(a)).

Under the CMIA, medical information is "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j).

Here, Defendant seems to argue that Plaintiff's CMIA claim is legally deficient because the allegations are too conclusory, failing to state what specific

---

cannot be the crime or the tort." *Id*. at *10. The court added, "Violation of HIPAA was not the purpose of the alleged interception." *Id*. Here, Plaintiff alleges a knowing interception and disclosure by Defendant with an illegitimate purpose.

medical information was provided to Defendant.  Mot. to Dismiss at 14–16.  Defendant compares this case to *Eisenhower*, where the court dismissed a CMIA claim because the complaint was "replete with conjectures and hypothetical scenarios and patients" and "Plaintiffs fail[ed] to allege any specificity as to what medical information was allegedly disclosed or when it was disclosed."  *B.K. v. Eisenhower Medical Center*, 721 F.Supp.3d 1056, 1064 (C.D. Cal. 2024).  However, here, Plaintiff pleads his claim with greater specificity than the plaintiffs in *Eisenhower*.[6]  The unredacted Complaint specifies how Plaintiff used the Website to search for medical treatment, information, and diagnoses for his specific medical conditions.  Unredacted Compl. ¶¶ 171, 174, 181, Dkt. No. 5-1.  Defendant does not respond to Plaintiff's argument that specific medical information was disclosed.  As a result, the Court finds that Plaintiff has sufficiently alleged that the disclosure of information reveals "medical history,…mental or physical condition, or treatment."  Cal. Civ. Code § 56.05(j).

Thus, Defendant's Motion as to Count Three is denied.

### G. Plaintiff Sufficiently Pleads Constitutional and Common Law Invasion of Privacy (Counts Four and Five)

"To state a claim for invasion of privacy under California common law and the California Constitution, a plaintiff must plead (1) the nature of any intrusion upon reasonable expectation of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests."  *Roe v. Amgen Inc.*, 2024 WL 2873482, at *4 (C.D. Cal. June 5, 2024) (internal quotation marks and citation omitted).  Claims for invasion of privacy under both the California Constitution and common law can be considered together.  *See Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1088 (N.D. Cal. 2022).  A cause of action for invasion of privacy "must be sufficiently serious in nature, scope, and

---

[6] At the hearing, Defendant argued that in *Eisenhower*, "Plaintiffs used the Website to research healthcare providers and communicate with them, research particular medical concerns and treatments, fill out forms and questionnaires, schedule and attend appointments, and perform other tasks related to specific medical inquiries and treatment.  Plaintiffs also used the Patient Portal to refill prescriptions, look at bills and payments, and to see test results and notes from appointments."  721 F.Supp.3d at 1062 (citations omitted).  This did not change that court's conclusion that Plaintiffs did not allege what specific medical information or medical records were transmitted or disclosed.  *Id.* at 1064.  However, Plaintiff has done so here.

actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Heeger v. Facebook, Inc.*, 509 F.Supp.3d 1182, 1193 (N.D. Cal. 2020) (internal quotation marks and citation omitted).

Defendant first argues that Plaintiff's invasion of privacy cause of action under the California Constitution is legally deficient because it seeks monetary damages, which Defendant argues is not allowed. Mot. to Dismiss at 16–17. Plaintiff does not address this argument in his Opposition, seemingly conceding that monetary damages are not allowed for an invasion of privacy cause of action under California's Constitution. *See generally* Opp'n. Nonetheless, in the Complaint, Plaintiff also seeks an injunction for invasion of privacy under California's Constitution. Compl. ¶ 276. Accordingly, Defendant's motion to dismiss on this ground is denied.[7]

Defendant next argues that the claims are legally deficient. Plaintiff alleges that Defendant, without Plaintiff's consent, disclosed his PHI, along with his Facebook ID and IP address, to third-party digital advertising companies, such as Meta. Compl. ¶¶ 9–11. As a result, Plaintiff received targeted advertisements on Facebook or Instagram related to his specific medical conditions and/or treatments. *Id.* ¶ 181. The Court finds that Plaintiff has sufficiently alleged that there was an intrusion upon reasonable expectation of privacy. *See Grafilo v. Wolfsohn*, 33 Cal.App.5th 1024, 1034 (2019) (it is "well-settled" that patients have a "right to privacy" in their medical records) (collecting cases).

Defendant also seems to argue that the invasion of privacy claims fail because the disclosures of URLs, IP addresses, and Facebook IDs are not highly offensive enough to become actionable conduct. Mot. to Dismiss at 18–19. The Ninth Circuit has noted that "[w]hile analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606. (citation omitted). Thus, "[t]he ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *Id.*

Here, Plaintiff alleges in his unredacted Complaint how he used the Website to search for medical treatments, information, and diagnoses for his medical

---

[7] Defendant did not move to strike allegations relating to monetary damages.

conditions. Unredacted Compl. ¶¶ 171, 174. Plaintiff then alleges that these specific searches were disclosed to third parties, which led to him receiving advertisements related to his medical conditions and/or treatments. *Id.* ¶¶ 174, 181. Plaintiff alleges that invasion of privacy involving private medical communications constituted an "egregious breach of the societal norms underlying the privacy right." *Id.* ¶ 274. Defendant's citation to *Eisenhower* is unavailing because in *Eisenhower*, the plaintiffs failed "to plead that any medical information was disclosed," which is not the case here. 721 F.Supp.3d at 1067. Thus, Plaintiff's allegations that Defendant used his PHI for targeted advertising is enough to survive a motion to dismiss on the issue of whether this conduct is highly offensive.

Defendant's Motion as to Counts Four and Five is denied.

### H. Plaintiff Has Failed to Sufficiently Plead Unjust Enrichment (Count Six)

Plaintiff's final cause of action seeks relief through unjust enrichment, an equitable remedy. Unjust enrichment is available when "a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation marks and citation omitted). "Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (collecting cases). "In the absence of clear guidance from California courts, the Ninth Circuit 'has construed the common law to allow an unjust enrichment cause of action through quasi-contract.'" *Desert Care Network*, 2024 WL 1343305, at *11 (quoting *id.*). The Ninth Circuit requires that a complaint seeking an equitable remedy, such as unjust enrichment, plead the inadequacy of a legal remedy. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Here, Defendant first argues that Plaintiff's unjust enrichment cause of action fails because there is no standalone cause of action for unjust enrichment. Mot. to Dismiss at 19–20. As discussed above, Defendant's argument here fails. Defendant also argues that Plaintiff has failed to plead in the Complaint that legal remedies are inadequate. Plaintiff only makes a conclusory allegation that he and the Class Members "have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records."

Compl. ¶ 294.  Plaintiff does not address this argument in his Opposition, seemingly conceding that he fails to adequately plead that legal remedies are inadequate.  *See generally* Opp'n.

Thus, the Court grants the Motion to Dismiss, with leave to amend, as to Count Six.

I.      **Defendant's Motion to Strike Class Allegations Is Premature**

Defendant moves to strike Plaintiff's class allegations.  Mot to Dismiss at 21.

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  However, "[d]etermining whether to certify a class is normally done through a motion for class certification under Rule 23."  *Rosales v. FitFlop USA, LLC*, 882 F.Supp.2d 1168, 1179 (S.D. Cal. 2012).  Although a few courts have held that Rule 12(f) provides a way of striking class allegations, "such a motion appears to allow parties a way to circumvent Rule 23 in order to make a determination of the suitability of proceeding as a class action without actually considering the motion for class certification."  *Id.*  Thus, as "long as class action allegations address each of the elements of Rule 23, related to the subject matter of the litigation, and are not redundant, immaterial, or impertinent, the court should find that the allegations are sufficient to survive a motion to strike."  *Id.* (internal quotation marks and citation omitted).

Defendant essentially argues that the proposed class will not be able to satisfy Rule 23 because monetary damages are sought.  Mot. to Dismiss at 21–24.  However, seeking individualized monetary damages does not defeat class certification.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (holding that "a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial").

Defendant also argues that the proposed class is not ascertainable because the class definitions are too broad and lack objective criteria.  Mot. to Dismiss at 24–25.  However, "questions about ascertainability of the class are best decided at the class certification stage with the benefit of more complete briefing and

development of the record." *Weinberg v. Twitter, Inc.*, 2024 WL 3908112, at *5 (N.D. Cal. Aug. 21, 2024) (internal quotation marks and citation omitted).[8]

Here, Plaintiff's allegations address Rule 23's requirements, relate to the subject matter of this litigation, and are not redundant, immaterial, or impertinent. Compl. ¶¶ 187–204. The Court finds that determining issues related to class suitability should be resolved during a motion for class certification, after an opportunity for discovery. *Nelson v. PVH Corp.*, 2015 WL 13916989, at *2 (C.D. Cal. Aug. 18, 2015) ("It is in fact rare for a court to grant a motion to strike class allegations before a motion for class certification and before discovery."). Thus, the Court finds Plaintiff's class allegations sufficient to survive a Rule 12(f) motion and denies Defendant's motion. *Lockwood v. Conagra Foods, Inc.*, 597 F.Supp.2d 1028, 1035 (N.D. Cal. 2009) ("The Court cannot determine on the pleadings whether a class-wide inference is appropriate in this case. Accordingly, defendant's motion to strike the class allegations is denied without prejudice to the Court considering the issue on a fully-briefed and supported motion concerning class certification.").

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES IN PART and GRANTS IN PART Defendant's Motion to Dismiss, with leave to amend, and DENIES Defendant's Motion to Strike Class Allegations.

Any amended complaint must be filed within **fourteen (14) days** of the date this Order is filed and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the original complaint, Plaintiffs must include in it all the claims they wish to present. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Plaintiffs may not incorporate material from the original Complaint by reference.

**IT IS SO ORDERED.**

---

[8] Defendant also cites to *Martinez* and *In re Hulu Privacy Litigation* in its Reply. Reply at 9–12. However, both cases were decided at the class certification stage, not the pleading stage. *See generally Martinez v. D2C, LLC*, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024); *In re Hulu Priv. Litig.*, 2014 WL 2758598 (N.D. Cal. June 17, 2014).